UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

URSULA C. STATEN                                                                PLAINTIFF

VERSUS                                              CIVIL ACTION NO. 1:12CV128-LG-JMR

COMMISSIONER OF SOCIAL SECURITY                                 DEFENDANT

**REPORT AND RECOMMENDATION**

Plaintiff, Ursula C. Staten ("Staten") filed a [1] Complaint on April 24, 2012 for judicial review of Defendant Commissioner of Social Security's ("Commissioner") denial of Staten's application for disability benefits under the Social Security Act. Before the Court is Staten's [17] Response to Order Directing the Filing of Briefs requesting that the Court reverse the decision of the Commissioner and remand the matter to the Administrative Law Judge (ALJ) for further consideration. The Government has filed a Memorandum in Opposition to Plaintiff's Response to Order [18] and Plaintiff has filed a Response to the Memorandum in Opposition [19].

On August 18, 2010, Staten filed her application for a period of disability and disability insurance benefits asserting that she had become disabled since April 1, 2008 [13-1, pp.78-80,204]. On August 23, 2011, the Administrative Law Judge ("ALJ") issued a decision denying Plaintiff's applications [13-1, pp.22-32] and Plaintiff's Request for Review was subsequently denied by the Appeal Council [13-1,pp. 7-10]. The Court finds that Plaintiff has exhausted her administrative remedies and has timely filed this action in this Court. The matter is ripe for review under 42 U.S.C.§§405(g), 1383(c)(3).

Staten was 53 years old at the time of the ALJ's determination [13-1,pp.31]. She has a high school education and has attended a few years of college [13-1,p.42.] Her past relevant work experience is as a lead baker and massage therapist [13-1,pp. 43-46]. She has alleged disability beginning on April 1, 2008 because of degenerative disc disease, anxiety, asthma, arthritis, and arm pain [13-1,p. 204].

The ALJ found that Plaintiff had severe impairments of obesity, cervical disease, anxiety, depression and personalty disorder [13-1,p.25]. The ALJ further found that she could not perform her past relevant work as a baker or massage therapist [13-1,p.31]. However, the ALJ concluded that the Plaintiff retained the residual functional capacity ("RFC") to perform light work with certain delineated exceptions. The ALJ relied on the testimony of Kelly Hutchins, a vocational expert, ("VE") to determine that the Plaintiff could perform other work with her limitations existing in significant numbers in the national economy [13-1,pp.31-32, 60-61]. Thus, the ALJ determined that the Plaintiff was not disabled [13,p.32]. The federal courts review the Commissioner's denial of social security benefits only to ascertain whether (1) the final decision is supported by substantial evidence and (2) the Commissioner used the proper legal standards to evaluate the evidence. *Newton v. Apfel*, 109 F.3d 448, 452 (5th Cir. 2000) (citing *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999)). "If the Commissioner's findings are supported by substantial evidence, they must be affirmed." *Id.* (citing *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995)). "Substantial evidence is such relevant evidence as a reasonable mind might accept to support a conclusion. It is more than a mere scintilla and less than a preponderance." *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995); *see also Fraga v. Bowen*, 810 F.2d 1296, 1302 (5th Cir. 1987). The court does not re-weigh the evidence in the record, try the

2

issues *de novo*, or substitute its judgment for the Commissioners, even if the evidence preponderates against the Commissioner's decision. *Brown*, 192 F.3d at 496. "Conflicts in the evidence are for the [Commissioner] and not the courts to resolve." *Id.* (quoting *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990)).

Plaintiff has the ultimate burden of proving she is entitled to benefits. *Masterson v. Barnhart*, 309 F.3d 267, 271 (5th Cir. 2002). To meet this burden, Plaintiff must provide competent evidence to authenticate a medical or psychological condition that prevents her from engaging in substantial gainful work activity. 20 C.F.R. § 404.1512(a) (2012). Here, the ALJ found that Plaintiff could not return to her past relevant work as a lead baker or massage therapist [13-1, p.31].

Once Plaintiff established that she was unable to return to her former occupation, the burden shifts to the Commissioner to show that there was other gainful employment the claimant is capable of performing in spite of her existing impairments. *Crowley v. Apfel*, 197 F.3d 194,198 (5th Cir. 1999). The burden, then, shifts back to the Plaintiff to prove she "in fact cannot perform the alternate work in order to be found disabled.*" Id.* The Court finds Plaintiff has not sustained her burden.

After determining Plaintiff was unable to perform a full range of light work activity, the ALJ obtained VE testimony to determine if Plaintiff could obtain employment [13-1,pp. 59-61); *Carey v. Apfel*, 230 F.3d 131, 145 (5th Cir.2000). The ALJ asked the VE what type of position could a hypothetical individual of Plaintiff's age, education, and work experience with the functional limitations consistent with Plaintiff's RFC obtain [13-1,pp. 59-61]. The VE responded that the hypothetical individual could perform the jobs of bench assembler, linen folder, and mail sorter, with 3,900 such jobs in Mississippi and more than 400,000 such jobs

in the national economy[ 13-1, pp. 59-61].

The ALJ, after consideration of the VE's testimony and the record, determined that there were jobs existing in significant numbers in the national economy that Plaintiff could perform given her RFC [13-1,pp. 31-32, 59-61]. The ALJ must incorporate all of a claimant's limitations and the claimant must be afforded the opportunity to correct deficiencies in the ALJ's questions. *Boyd v. Apfel*, 239 F.3d 698, 707-08 (5th Cir.2001) Cir. 2001) (citing *Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir. 1994)). The hypothetical question in this case incorporated limitations consistent with those in the ALJ's RFC finding and Plaintiff's representative had the opportunity to cross-examine the VE and address any shortcomings in the ALJ's hypothetical question [13-1 at 59-63]. Accordingly, the Court finds the VE's testimony constitutes substantial evidence in support of the ALJ's findings that Plaintiff could perform other work and she was not disabled.

On appeal, Plaintiff challenges whether the ALJ (1) properly considered opinions from her treating sources, (2) properly evaluated her subjective complaints of pain and other symptoms, (3) properly relied on the VE's testimony to find Plaintiff could perform work existing in significant numbers in the national economy, and (4) provided Plaintiff a full and fair hearing [17].

Plaintiff contends the ALJ did not properly consider reports from her treating sources [17]. The opinion of a treating physician who is familiar with a claimant's medical condition should generally be accorded considerable weight in determining disability. *Perez v. Barnhart*, 415 F.3d 457, 465-66 (5th Cir. 2005). In fact, a treating physician's opinion may even be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with . . . other substantial evidence."

4

Newton v. Apfel , 209 F.3d 448, 455 (5th Cir. 2000). However, the ALJ is free to assign little or no weight to the opinion of any physician, even a treating source, for good cause *Id.* Good cause arises where statements are brief and conclusory, not supported by medically acceptable clinical laboratory diagnostic techniques, or otherwise unsupported by the evidence. *Perez*, 415 F.3d at 466; *Newton*, 209 F.3d at 456. Consequently, treating physicians' opinions are not only not conclusive in disability claims, *Perez*, 415 F.3d at 466, but may be rejected when the evidence supports a contrary conclusion. *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995).

In this case, it does not appear that any of Plaintiff's treating physicians ever provided any opinion regarding her disability with the exception of Dr Barnes' August 25, 2011 leave of absence wherein he concluded that she could no longer be a massage therapist [13-2,p.168].

The ALJ considered the medical record presented. The record indicates that Plaintiff was hospitalized in Biloxi Regional Hospital on June 12, 2007 and discharged on June 14, 2007, her discharge diagnosis was "dysfunctional bleeding secondary to uterine fibroids and severe blood loss anemia with iron deficiency" [13-2 p.23]. Dr. Barnes concluded that the Plaintiff would be making plans for a hysterectomy [13-2,p.24 ].

Her next relevant medical record concerns a vehicular accident after which she sought treatment from Timothy Murphy for cervical radiculitis, celphalgia, cervical brachial syndrome on March 3, 2008 [13-2,p.27]. On May 5, 2008, Murphy referred her back to Dr. Barnes concluding that Plaintiff complained that the "E-stim aggravates her spinal condition. I explained to her how unusual this is based on my experience." *Id.*

On March 1, 2009, Plaintiff presented to the Emergency Department at Biloxi

Regional Medical Center ("Biloxi Regional") with a complaint of "Shortness of breath- Hx of Asthma/COPD" [13-2,p.48]. Her clinical impression was "Asthma, Acute Exacerbation" *Id*. A radiological interpretation found " that her heart was not enlarged. The lungs are clear. No pleural, diaphragmatic, or thoracic cage abnormalities are detected" [13-2,p.51].

On June 3, 2010, Plaintiff presented to the Emergency Department at Biloxi Regional due to a ceiling tile falling on her and "twisted her neck wrong" [13-2,p.33]. Her chief complaint at that time was a "neck injury [mild]" and she had pain radiating down her left arm." *Id*. The radiological interpretation performed on June 3, 2010 found "a straightening of the cervical spine consistent with muscle spasm versus positioning and degenerative change" [13-2,p.37].

On August 31, 2010, Plaintiff again went to the Emergency Department of Biloxi Regional, at that time her chief complaint was "arm pain (complete arm/no known injury)". The clinical impression was "cervical radiculopathy" [13-2,pp.39-40].

On September 7, 2010, Plaintiff also presented to the Emergency Department of Biloxi Regional, again with "arm pain complete arm/no known injury" [13-2,p.41 ]. The clinical impression was "chronic arm and neck pain" [13-2,p.42 ].

Dr. Matherne performed a psychological consultation on the Plaintiff for the Disability Determination Services Department on November 14, 2010 [13-2,pp.53-58] . Dr. Matherne concluded that she had "basic communication and social skills which allowed her to interact with others." [13-2, p.57]. He further stated that due to her neck related problems an additional medical examination might be needed. He found that there was evidence of some anxiety and depression but no evidence of psychosis [13-2,p. 58 ]. Her memory was intact and she had fair concentration. *Id* He concluded that she was mildly impaired in her ability

to perform routine, repetitive tasks and in her ability to interact with co-workers and supervisors. *Id*

The record also includes her treatment by Dr. Terry Smith. On April 29, 2008, Dr Smith's records indicate that she was referred to him by Vocational Rehabilitation as Plaintiff's problems became worse in February of 2008 when a car backed into her resulting in pain in her left shoulder [13-2,p.93]. Dr. Smith concluded that she had a disk abnormality at C 5-6 but she did not want surgery. *Id* Plaintiff saw Dr. Smith on August 24, 2010 reporting that her left arm was better but her right arm hurt [13-2,p.92]. He reported that she had been obtaining Loratab from Dr. Barnes so that he prescribed only physical therapy. *Id*. On September 28, 2010, Dr. Smith reported that Plaintiff had pain in her left neck, shoulder and upper arm [13-2,p.91]. He recounted that he had given her a prescription to go to physical therapy which was approved by Vocation Rehabilitation, "but she did not go until today and then she apparently refused to be treated." *Id*. Dr. Smith indicated that he expressed "his displeasure that she is not following my recommendation on therapy as I think it would help." *Id* He further noted that "We will see if Vocational Rehabilitation will do a followup MRI and if it looks good I will turn her care over to Dr. Barnes."*Id*.

On October 29, 2010, an MRI was performed at Compass Imaging which indicated that "the cervical vertebral bodies appear intrinsically normal other then postoperative and degenerative changes" [13-2,pp.89-90 ].

Finally, on February 2, 2011, Dr. Smith saw Plaintiff for apparently her last appointment [13-2,p.87]. He noted that she had not shown up for her last three appointments. *Id* He concluded that her shoulder and arm were better prior to surgery. Id. He found upon examination that "She had a good range of motion of the neck, normal

strength, sensation, reflexes and gait." *Id.* He further indicated that Dr. Banes still had her on Loratab. *Id.* He concluded that her main purpose for her visit was to discuss a lawsuit regarding something that hit her on the head but his notes did not reflect this incident. *Id.*

On March 4, 2008, Rodney Nichols, a Physical Therapist with Absolute Physical Therapy, indicated that Plaintiff had a excellent prognosis to "decrease or abolish cervical and left shoulder pain; restore normal muscle tone and abolish NSRs in cervical and upper thoracic muscles; restore cervical and left shoulder ROM to pain free normal limits; and restore ability to return to full ADLs without any pain and disability index to less then 5% [13-2,p.96]. Plaintiff was discharged from Absolute Physical Therapy on July 13, 2008, twelve visits were scheduled but she only attended the initial visit [13-2,p.97 ]. Nichols reflected that after her treatment on March 4, 2008, Plaintiff had stated that there was a fifty percent decrease in neck pain and an increase in cervical ROM one hundred percent. *Id.*

In medical consultant review signed on April 21, 2011, Dr. Madena Gibson indicates that as of November 2010 her MRI f/u scan looks good [13-2,p.155]. Plaintiff reflected that she was "a whole lot better and thinks she may go back to work the first part of the year." *Id* Finally, on August 25, 2011, Dr. Barnes wrote a leave of absence for the Plaintiff indicating she was unable to return to her work as a massage therapist without any further comment [13-2,p.168].

The record indicates Compass Imaging's note of thyroid inhomogeneity on magnetic resonance imaging [13-2, pp.89-90]. With regard to this condition, the ALJ noted that, although further studies were recommended, these studies did not take place, and no other medical evidence suggested thyroid inhomogeneity caused significant restrictions [13-1 at 25]. The ALJ also noted that no treating source had linked Plaintiff's obesity to this thyroid

8

abnormality [Doc. 13-1 at 25]. To contest this issue, Plaintiff attached to her Brief in Response to Order [17] a copy of the Report from Compass Imaging dated November 6, 2010 wherein Dr. William Henry of Compass Imaging opined that "the thyroid gland was in the upper limits of normal in size and the cysts have benign characteristics" [17-1]. Dr. Henry recommended Plaintiff be seen for a follow up visit in a year [17-1]. Plaintiff has also attached an undated prescription of Dr. Barnes to obtain an ultra sound of her thyroid [17-2]. The Court finds that this additional evidence does not indicate that there was any significant medical issue with regard to Plaintiff's thyroid.

The ALJ noted Plaintiff's doctors did not give her any restrictions or limitations [13-1 at 30; Doc. 13-2 at 23-52, 85-136, 157-214]. Accordingly, The Court finds the ALJ adequately considered records from Plaintiff's treating physicians and determined they did not conflict with the established RFC.

Plaintiff contends the ALJ did not properly evaluate her statements or those of other witnesses about her pain and the side effects of her medication [17]. The ALJ evaluated Plaintiff's testimony pursuant to the regulations and precedent. "It is within the ALJ's discretion to determine the disabling nature of a claimant's pain, and the ALJ's determination is entitled to considerable deference." *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001).

The ALJ noted in that Plaintiff testified that her pain caused her blood pressure to rise; that she has anxiety; that she has weight problems connected with her thyroid; that her steroid medications cause swelling; that she has excruciating pain because of a slipped disk; and that sitting down for any period hurts her [ 13-1 at 29, 42, 46-59]. The ALJ determined this testimony was not fully credible [ 13-1 at 29].

First, Plaintiff alleges the ALJ did not adequately consider third-party statements supporting her subjective allegations [17] and the ALJ's discounting of Plaintiff's testimony is an implicit rejection of those statements as well. *Haywood v. Sullivan*, 888 F.2d 1463, 1471 (5th Cir. 1989). The ALJ considered the consistency of Plaintiff's testimony with the medical evidence of record [13-1 p. 29]. *Falco v. Shalala*, 27 F.3d 160, 164 (5th Cir. 1994). The ALJ considered the opinions of consultative examiner J. Donald Matherne, Ph.D., and state agency consultants William Hand, M.D., and Sharon Scates, Ph.D. [ 13-1 p. 29] as well as Plaintiff's treating physician and tests.

Dr. Matherne examined Plaintiff in November 2010 as stated he opined she had a mild impairment in her ability to perform routine, repetitive tasks [13-2 pp. 54-58]. He further concluded Plaintiff had a moderate impairment in interacting with co-workers and supervisors, and he diagnosed adjustment disorder with mixed anxiety and depressed mood [13-2 at 58].

On December 1, 2010, Dr. Hand reviewed the medical records [Doc. 13-2 pp. 59-66]. Upon his review of the record, Hand noted Plaintiff was status post-anterior cervical fusion at C5-6 as of July 2010 [13-2,p.60]. Dr. Hand further found evidence that Plaintiff's symptoms had improved, with a projection of full healing [13-2 p.60]. He opined Plaintiff could perform medium work [13-2 pp. 60-66].

On April 20, 2011, Dr. Scates reviewed medical evidence including treatment notes and Dr. Matherne's report [13-2 pp 137-54)]. Based on such evidence, she noted symptoms of affective disorders, anxiety-related disorders, and personality disorders [13-2 p. 137]. She further noted mild limitations in activities of daily living and social functioning, moderate restrictions in concentration, persistence, or pace, and no episodes of decompensation [13-2

p.147].

Moreover the ALJ had reviewed plaintiff's treating physician's notes of September 28, 2010 reflecting that she did not seek physical therapy even though it was approved [13-2,p.91]. Her October 29, 2010, MRI which indicated that "the cervical vertebral bodies appear intrinsically normal other then postoperative and degenerative changes" [13-2,pp.89-90]. Her final visit to Dr. Smith on February 2, 2011, [13-2,p.87)] in which his notes indicated that she had not shown up for her last three appointments. His conclusions were that her shoulder and arm were better prior to surgery. *Id.* He found that she had a good range of motion of the neck, normal strength, sensation, reflexes and gait. *Id.*

He reviewed the March 4, 2008, Absolute Physical Therapy report indicating that Plaintiff had a excellent prognosis to "decrease or abolish cervical and left shoulder pain; restore normal muscle tone and abolish NSRs in cervical and upper thoracic muscles; restore cervical and left shoulder ROM to pain free normal limits; and restore ability to return to full ADLs without any pain and disability index to less then 5% [13-2,p.96 ]. The report indicated that she only attended one of the twelve scheduled visits [13-2,p.97]. Rodney Nichols, her Physical Therapist reflected that she stated that there was a fifty percent decrease in neck pain and an increase in cervical ROM one hundred percent. *Id.*

Moreover, he reviewed the medical consultant review signed on April 21, 2011, wherein Dr. Madena Gibson indicates that as of November 2010 her MRI f/u scan looks good [13-2,p.15] and Plaintiff reflected that was "a whole lot better and thinks she may go back to work the first part of the year. *Id*

Based on a review of the medical evidence and her own testimony, the Court finds that the ALJ's reasonably concluded that the Plaintiff's limitations were less severe then

alleged [13-1p.29-30]. In this regard, the ALJ further considered that the Plaintiff's daily activities "are not limiting to the extent one would expect , given the complaints of disabling symptoms and limitations."[ 13-1,p.30] . The Court finds that ALJ's evaluation of these considerations were proper as "inconsistencies between [Plaintiff's] testimony about his limitations and daily activities were quite relevant in evaluating his credibility." *Reyes v. Sullivan* , 915 F.2d 151,155 ( 5thCir. 1990) ( *per curiam*) In the pending matter, Plaintiff's representations that she prepared her own meals, had slight pain when bathing and dressing, drove, shopped and handled finances led to the ALJ's consideration that Plaintiff's condition was not as limiting as alleged [13-1 p.56, 228-31]. The Court finds that Plaintiff's testimony and substantial evidence supports the ALJ's finding that Plaintiff was not fully credible so that his evaluation of her subjective complaints was proper.

Plaintiff also contends that the ALJ did not properly consider the VE's response to the second hypothetical question he posed .The ALJ asked the VE a hypothetical question consistent with Plaintiff's RFC, and the VE responded by identifying jobs Plaintiff could perform [Doc. 13-1 pp. 59-61]. Plaintiff and her representative had the opportunity to cross-examine the VE and address any shortcomings in the hypothetical question [13-1 pp. 61-64], the VE's testimony constitutes substantial evidence that Plaintiff could perform work existing in significant numbers in the national economy and was not disabled. *Boyd*, 239 F.3d at 707-08.

Plaintiff alleges that the ALJ asked a second hypothetical question assuming an individual with Plaintiff's RFC also "has side effects of medication that would require unscheduled breaks at will," and the VE responded that such a limitation would eliminate all competitive employment [13-1 p.61; Doc. 17]. Plaintiff suggests that the ALJ should have

12

credited the VE's testimony in response to this second hypothetical question and therefore found her disabled.  An ALJ need only incorporate into the hypothetical question those limitations "supported by the evidence and recognized by the ALJ." *Masterson*, 309 F.3d at 273. In the pending matter, the ALJ did not find that Plaintiff had side effects of medication that would require unscheduled breaks at will [13-1 ,p. 28). The Court finds the ALJ was not bound by the VE's testimony that such a limitation would preclude competitive employment.

Plaintiff also contends the ALJ did not provide her a full and fair hearing [17]  Plaintiff has demonstrated no prejudicial procedural defects in the handling of her claim.  An ALJ has a duty to develop the facts fully and fairly relating to an applicant's claim for disability benefits. *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995). Reversal is appropriate only if the applicant shows that she was prejudiced. *Id.* Prejudice can be established by showing that, had the ALJ adequately performed his duty, plaintiff "could and would have adduced evidence that might have altered the result." *Kane v. Heckler*, 731 F.2d 1216, 1220 (5th Cir.1984); *James v. Bowen*, 793 F.2d 702, 705 (5th Cir. 1986) .

Plaintiff contends that she was not given fair opportunity to review a CD of her claim file prior to the hearing [17]. The ALJ informed Plaintiff on June 14,  2011, that she should call the hearing office to arrange to see her file or to ask for a disc containing her claims file [13-1,p.135].  Plaintiff's written request for the CD of her claims files is purported to have been received by the agency on August 9, 2011 [13-1,p. 294]. The document at issue is undated [13-1,p.294].  The agency mailed Plaintiff the CD, two days later, on August 11, 2011, and she received it on August 15, 2011, the day of the administrative hearing [1-8; 17].  As the ALJ gave Plaintiff adequate notice of her rights, and the agency promptly complied with Plaintiff's written request upon receiving it, Plaintiff has not demonstrated any

13

prejudicial procedural defect as she has not presented any evidence which would have been adduced had she earlier obtained the CD.  *Ripley*, 67 F.3d at 557; *Kane*, 731 F.2d at 1220; *James*, 793 F.2d at 705.

Plaintiff also asserts that the Appointment of Representative form designating Karen Rice as Plaintiff's representative, was a request for a copy of the claim file [17 (citing13-1,p.123)].  The form contains no language requesting a copy of the file [13-1, p. 123, 150]. The form was dated August 10, 2011, one day after the agency received Plaintiff's request for the CD of her file and was received August 12, 2011 after the agency had already mailed a CD of Plaintiff's file [1-8;13-1 pp. 123, 150, 294].  Accordingly, the Court finds that even if the Appointment of Representative form were an implicit request for the CD,  Plaintiff has demonstrated no prejudicial procedural defect, because the agency had already mailed Plaintiff's CD by the time it received the Appointment of Representative as Plaintiff's request for the CD was presented a day before this form was submitted [1-8 at 1; Doc. 13-1 at 123, 150]; *Ripley*, 67 F.3d at 557.

Plaintiff also takes issue with her lack of attorney representation, as she was represented by paralegal Karen Rice [17].  In a letter dated May 25, 2011, the agency informed Plaintiff that she could choose to be represented by an attorney or other person and that she may be able to receive free representation [13-1,p. 93]. The agency also included a list of organizations that could assist in finding a representative, including organizations providing free legal representation [13-1 at 97). In fact, Ms. Rice, Plaintiff's representative worked for one of these organizations, the Gulfport office of the Mississippi Center for Legal Services [13-1 pp. 97, 123, 150, 327]. Plaintiff also avers she contacted numerous attorneys for representation, suggesting she was aware of her right to counsel

14

[17 (citing 13-1,pp. 326-27)]. As the evidence presented indicates that Plaintiff had notice of her right to counsel and even to free representation, the Court finds that the fact that Plaintiff did not obtain an attorney is not a procedural defect attributable to the ALJ.

Plaintiff also appears to suggest that the ALJ mistakenly thought Ms. Rice was an attorney [17]. Plaintiff is correct that the hearing transcript refers to Plaintiff's representative as an attorney [13-1 at 37, 40, 57]. However, the ALJ appears to be aware of the fact that Ms. Rice was not an attorney as he referred to her as Plaintiff's non-attorney representative in the decision on Plaintiff's claims [13-1,p. 22]. At the hearing itself, Plaintiff's representative questioned Plaintiff [13-1,pp. 57-58] and had an opportunity to object to the exhibits in the file [13-1,p. 40] and to cross-examine the VE [13-1,p. 61]. Accordingly, Plaintiff has not demonstrated any prejudice arising from the transcript's designation of Ms. Rice as an attorney. *Ripley*, 67 F.3d at 557.

The Court finds as Plaintiff has presented no evidence showing she was prejudiced and has not presented any additional evidence which might have been adduced to support her claim for disability [17], her lack of legal representation does not require a finding that the ALJ's decision was not supported by substantial evidence. *Brock v. Chater*, 84 F.3d 726, 729 (5th Cir. 1996).

Plaintiff also contends that technical difficulties resulted in "inaudible testimony throughout [the hearing] at critical and important testimony" [17]. Plaintiff has not demonstrated that any inaudible portions of the transcript are prejudicial. The first inaudible segments in the hearing transcript appear when the ALJ questions Plaintiff about her work history [13-1,p. 45]. Plaintiff does not appear to contend that the inaudible questions or testimony resulted in incorrect information about her past work. Moreover, the transcript

15

contains information about her work history [13-1, pp. 175-81]. The next inaudible segments occur when the ALJ inquires about Plaintiff's neck injury [13-1, p. 47]. The only portion of Plaintiff's testimony omitted here is her apparent confirmation that her neck surgery was performed by Dr. Smith [13-1, p. 47].

Plaintiff's testimony is uninterrupted [13-1, pp. 48-49]. Other inaudible portions involve an exchange about how often Plaintiff sleeps during the day [13-1, p. 51], and most important aspects of Plaintiff's testimony in this regard concerning the effects of her medications which result in her sleeping all but a few hours each day is reflected in the transcript [13-1, p. 51].

The ALJ's question about Plaintiff's anxiety is partially inaudible, but Plaintiff's response is uninterrupted [13-1, pp. 53-54]. Similarly, the ALJ asks Plaintiff about her symptoms connected with her thyroid condition, and Plaintiff's testimony is uninterrupted [13-1, pp. 54-55]. Plaintiff also testified audibly about her need to sit after standing, although the ALJ's question is cut off [13-1, p. 56]. Finally, all of the VE's testimony is audible [13-1, pp. 59-61].

The material portions of the hearing are reflected in the transcript. The Court finds Plaintiff has not shown that any technical difficulties at the hearing prejudiced her. *Ripley,* 67 F.3d at 557. The Court further finds that Plaintiff has not met her burden to show that, absent the procedural defects she alleges in this case, she would have a presented additional evidence to support her claim of disability.

In conclusion, the Court finds that the ALJ used the proper legal standards and that his opinion is supported by substantial evidence. Based on the foregoing, the Court recommends that the Plaintiff's appeal be dismissed with prejudice; and, that Final

16

Judgement in favor of the Commissioner be entered.

Pursuant to 28 U.S.C. § 636(b)(1), any party who desires to object to this report must serve and file written objections within fourteen (14) days after being served with a copy unless the time period is modified by the District Court. A party filing objections must specifically identify those findings, conclusions and recommendations to which objections are being made; the District Court need not consider frivolous, conclusive or general objections. Such party shall file the objections with the Clerk of the Court and serve the objections on the District Judge and on all other parties. A party's failure to file such objections to the proposed findings, conclusions and recommendation contained in this report shall bar that party from a de novo determination by the District Court. Additionally, a party's failure to file written objections to the proposed findings, conclusions, and recommendation contained in this report within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the Report and Recommendation that have been accepted by the district court and for which there is no written objection. *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

SO ORDERED, this the 12th day of July, 2013.

                                            /s/ John M. Roper, Sr.
                              CHIEF UNITED STATES MAGISTRATE JUDGE